## 24-1364

# United States Court of Appeals
### *for the*
# Fourth Circuit

COVINGTON SPECIALTY INSURANCE COMPANY,

*Plaintiff/Appellee,*

— v. —

OMEGA RESTAURANT & BAR, LLC,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK

# BRIEF OF APPELLEE

Charles M. Sims
Joseph M. Rainsbury
O'HAGAN MEYER PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
(804) 403-7100

*Counsel for Appellee*

CP COUNSEL PRESS      (800) 4-APPEAL • (JOB 810843)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-1364</u>    Caption: <u>Covington Specialty Insurance Co. v. Omega Restaurant & Bar LLC</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Covington Specialty Insurance Company</u>
(name of party/amicus)

who is <u>Appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Covington Specialty Insurance Company is a New Hampshire corporation and is owned by RSUI Group, Inc., which is owned by Alleghany Corporation, which is owned by Berkshire Hathaway, Inc.


3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO
    If yes, identify all such owners:
    Berkshire Hathaway, Inc. is publicly traded on NYSE.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Charles M. Sims                      Date: _____May 8, 2024_____

Counsel for: Appellee

- 2 -

Print to PDF for Filing

## <u>TABLE OF CONTENTS</u>

Table of Contents ............................................................................i

Table of Authorities .......................................................................ii

Preliminary Statement ....................................................................1

Issues Presented for Review ...........................................................4

Summary of Argument....................................................................5

Argument.........................................................................................7

    I.      The Court should dismiss this appeal as moot because
           Omega no longer is exposed to a risk of liability. ................................7

    II.    Omega's coverage arguments regarding the Geiger
           Plaintiffs' Lanham Act claims are procedurally barred
           and self-defeating. ................................12

    III.   Omega's coverage arguments regarding the Geiger
           Plaintiffs' statutory conspiracy claims are waived and, in
           any event, are not covered by the Policy................................15

    IV.   The allegations in the Underlying Complaint do not
           support a potential defamation-by-implication claim. ........................18

Conclusion .....................................................................................25

Addendum ......................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Bahnmiller v. Derwinski*, 923 F.2d 1085 (4th Cir. 1991) ...........................................8

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015).............................................17

*Catawba Riverkeeper Found. v. N.C. DOT*,
 843 F.3d 583 (4th Cir. 2016) .........................................................................8

*Eramo v. Rolling Stone, LLC*, 209 F.Supp.3d 862, 876 (W.D.
 Va. 2016) ......................................................................................................23

*Fleming v. Moore*, 275 S.E.2d 632 (Va. 1981).........................................................20

*Handberg v. Goldberg*, 831 S.E.2d 700, 706 (Va. 2019) ................................. 22, 23

*Hitt v. Cox*, 737 F.2d 421 (4th Cir. 1984) ..................................................... 9, 10, 11

*Holland v. Big River Minerals Corp.*,
 181 F.3d 597 (4th Cir. 1999).........................................................................14

*Huffman v. Peerless Ins. Co.*, 193 S.E.2d 773 (N.C. App. 1973)...........................11

*Katz v. Odin, Feldman & Pittman, P.C.*,
 332 F.Supp.2d 909, 922 (E.D. Va. 2004) ......................................................23

*Maher v. City of Chi.*, 547 F.3d 817 (7th Cir. 2008) ...............................................18

*Moss v. Harwood*, 46 S.E. 385 (Va. 1904) ..............................................................23

*Nationwide Mut. Fire Ins. Co. v. Erie Ins. Exch.*,
 798 S.E.2d 170 (Va. 2017).............................................................................14

*Pendleton v. Newsome*, 772 S.E.2d 759 (Va. 2015) ................................................21

*Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009) ..............................8

*Powell v. McCormack*, 395 U.S. 486 (1969) ...........................................................12

*Pornomo v. United States*, 814 F.3d 681 (4th Cir. 2016) ........................................16

*Radiance Found., Inc. v. NAACP*, 786 F.3d 316 (4th Cir. 2015) ...........................15

*Schaecher v. Bouffault*, 772 S.E.2d 589 (Va. 2015). ........................... 21, 22, 23, 24

*Silicon Knights, Inc. v. Epic Games, Inc.*, 551 F. App'x 646
 (4th Cir. 2014).............................................................................................17-18

*State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696
 (Tex. 1996).....................................................................................................11

*Stonehenge Eng'g Corp. v. Employers Ins. of Wausau*,
   201 F.3d 296 (4th Cir. 2000)................................................................10

*United States ex rel. Ubl v. IIF Data Solutions*,
   650 F.3d 445 (4th Cir. 2011)................................................................17

*United States v. Springer*,
   715 F.3d 535 (4th Cir. 2013)........................................................ 8, 12

## **Statutes**

U.S. Const. art. III § 2, cl. 1 ..............................................................7

15 U.S.C. § 1125..............................................................................1

Va. Code § 18.2-499 ................................................................ passim

Va. Code § 18.2-500 .......................................................... 1, 5, 15

Va. Code § 8.01-40 ..........................................................................1

## **Rules**

Fed. R. Civ. P. 32.1(b) ....................................................................8

Fed. R. Civ. P. 59(e)................................................................ passim

Fourth Circuit Local Rule 32.1 ........................................................8

PRELIMINARY STATEMENT

This insurance-coverage dispute concerns whether an "advertising and personal injury" provision in a commercial general liability policy ("the Policy") covers claims brought in a separate action[1] (the "Underlying Action") by several models (the "Geiger Plaintiffs") against a nightclub owner, Omega Restaurant & Bar, LLC ("Omega"), for the unauthorized use of the models' images in Omega's advertisements.  In their Amended Complaint (the "Underlying Complaint"), the Geiger Plaintiffs assert four claims against Omega.  Count I asserts a claim for unauthorized appropriation of likeness under Va. Code § 8.01-40.  Count II asserts a claim for statutory conspiracy under Va. Code § 18.2-499 and -500.  Count III asserts a claim for false advertising under § 43 of the Lanham Act.  And Count IV asserts a claim for false association under § 43 of the Lanham Act, 15 U.S.C. § 1125.

Appellee Covington Specialty Insurance Company ("Covington"), who issued the Policy to Omega, denied coverage but provided Omega a defense under a reservation of rights.  It then brought the present declaratory judgment action to resolve the coverage dispute.  The District Court resolved it in Covington's favor.  It found that Count I (misappropriation of likeness) was barred by the Policy's

---

[1] *Geiger et al. v. Omega Restaurant & Bar, LLC*, Civil Action No. 2:23-cv-256, (E.D. Va.).

1

intellectual-property exclusion, that Count II (statutory conspiracy) was not a claim covered by the Policy and, in any event, would be barred by the Policy's criminal-acts and intentional-acts exclusions, and that Counts III (false advertising) and IV (false association) likewise were not covered by the Policy.

The District Court further rejected Omega's argument that the Amended Complaint alleged facts sufficient to support potential claims for "misappropriation of advertising ideas" and defamation. It held that Virginia did not recognize the first cause of action and the second was not supported by the factual allegations in the Amended Complaint. Because the Policy did not cover any of the actual or potential claims implicated by the Underlying Complaint, the District Court granted Covington's motion for summary judgment.

On appeal, Omega makes three arguments. First, it contends that the District Court erred in finding no coverage for the Geiger Plaintiffs' Lanham Act claims (i.e., false advertising and false association). Omega contends that those claims "are predicated on Omega's misuse of and infringement on the Geiger Plaintiffs' trademarks in their image, likeness and persona." It further contends that a trademark is an "advertising idea." Thus, it reasons, the Lanham Act claims are encompassed by the Policy's "personal and advertising injury" coverage. But Omega waived this argument by not timely raising it below. And the argument

fails regardless because the Policy clearly and unambiguously excludes coverage for trademark claims.

Second, Omega argues that the District Court erred in finding that there was no coverage for the statutory-conspiracy claims brought against it. Omega claims that, contrary to the District Court's ruling, the Policy's criminal-acts exclusion does not bar coverage for the Geiger Plaintiffs' conspiracy because the Underlying Complaint does not allege that Omega committed any criminal acts. Omega waived this argument by not addressing the District Court's alternate bases for this ruling—lack of coverage under the "personal and advertising injury" provision and exclusion for intentional acts. Furthermore, statutory conspiracy is itself a criminal act, so any liability under this count would not be covered.

Third, Omega claims that the Underlying Complaint alleges sufficient facts to support a defamation claim against Omega, thereby triggering coverage. But the whole gist of the Underlying Complaint is that Omega used the images to attract customers, not to disparage the models. The latter is inconsistent with the former.

As explained below, however, this Court need not even entertain these arguments. During the pendency of the Underlying Action, the Geiger Plaintiffs and Omega entered into a collusive settlement agreement—one in which Covington played no part. Under their separate arrangement, Omega and the Geiger Plaintiffs agreed to the entry of a $155,000 judgment against Omega. But

3

this liability was a sham, as Omega has no obligation to pay any "damages" to the Geiger Plaintiffs under the stipulated judgment.  Instead, Omega simply assigned its bogus coverage claims against Covington to the Geiger Plaintiffs.  The stipulated judgment prohibits the Geiger Plaintiffs from collecting any part of the $155,000 judgment from Omega.

By entering into this pact with the Geiger Plaintiffs, Omega hoisted itself on its own petard.  The Policy covers only claims that Omega has a legal  obligation to pay.  But the terms of the judgment in the Underlying Action ensure that Omega has no legal  obligation to pay anything on the Geiger Plaintiffs' claims.  This extinguished Covington's obligation to indemnify or defend Omega under the Policy and, thus, mooted the legal issues raised by Omega's present appeal.

For all these reasons, elaborated below, this Court should dismiss this appeal as moot or, in the alternative, affirm the judgment below.

## ISSUES PRESENTED FOR REVIEW

1.     Does a settlement agreement between a plaintiff and an insured defendant in which the parties agree to entry of a stipulated money judgment—but where the plaintiff promises never to collect that judgment against the insured defendant—moot a still-pending coverage dispute between insurer and insured?

2.     Does an appellant waive an argument where it raised the issue for the first time in a motion to alter and amend a judgment under Federal Rule of Civil Procedure 59(e)?

3.     Does an appellant waive an argument where it fails to address other independently sufficient grounds for the district court's ruling?

4.     Does a policy exclusion for liabilities "arising out of the infringement of…trademark…rights" bar coverage for Lanham Act claims predicated on the insured's infringement of trademark rights?

5.     Does policy exclusions for intentional act and criminal acts bar coverage for statutory conspiracy under Virginia Code § 18.2-499 and -500?

6.     Does a lawsuit alleging that an insured nightclub used the plaintiff models' images to attract customers to their establishment state a potential claim for defamation by implication?

<u>SUMMARY OF ARGUMENT</u>

This Court should dismiss this appeal as moot or, in the alternative, affirm the judgment below.

The appeal should be dismissed as moot because the terms of Omega's settlement with the Geiger Plaintiffs establish that Omega has no legal obligation to pay damages  to them vis-à-vis their claims (or potential claims) arising out of the Underlying Complaint.  The absence of potential liability means that Omega no

5

longer has a justiciable interest in the outcome of this action.  As a result, there no longer is a live Article III case or controversy.  Accordingly, the Court should dismiss this appeal for lack of subject-matter jurisdiction.

If the Court reaches the merits, it should affirm the District Court's decision because Omega's arguments are procedurally barred and substantively without merit.

The Court should refuse to entertain Omega's contention that the Geiger Plaintiffs' Lanham Act claims are, in fact, claims based on trademark violations that represent covered "advertising injuries."  Omega raised this argument for the first time in its Rule 59(e) motion.  Accordingly, it is waived on appeal.  In any event, the argument is frivolous as the Policy unambiguously excludes coverage for trademark claims.

The Court also should refuse to entertain Omega's argument that the Policy covers the Geiger Plaintiffs' statutory-conspiracy claims.  The District Court cited two exclusions that barred coverage: the intentional-acts exclusion and the criminal-acts exclusion.  Yet Omega addresses only the latter.  And Omega also ignores the other ground for the District Court's conclusion, i.e., that "personal and advertising injury" coverage does not encompass conspiracy claims.  Failure to address all grounds for a district court's ruling waives any appeal of that ruling.  In any event, the argument is illogical.  To establish liability under Code § 18.2-499,

the Geiger Plaintiffs will need to prove facts establishing that Omega intentionally committed the crime of business conspiracy.  So the criminal-acts and intentional-acts exclusions bar coverage.

Finally, the Court should reject Omega's assertion that its alleged use of the Geiger Plaintiffs' images supports a potential claim for defamation-by-implication. To establish defamation-by-implication, a plaintiff must show that the publisher intended  to defame the plaintiff, and that publisher's statements rendered the plaintiff odious, infamous, or ridiculous or subject to disgrace, shame, scorn, or contempt.  The gravamen of the Geiger Plaintiffs' Complaint, however, is that Omega used their images to attract customers to their establishment, not to invite contumely or odium.  Because the alleged use of the images lacks any defamatory "sting," the Underlying Complaint does not support a potential defamation claim.

<u>ARGUMENT</u>

**I.      The Court should dismiss this appeal as moot because
        Omega no longer is exposed to a risk of liability.**

As a threshold matter, this Court should dismiss the present appeal as moot because the terms of Omega's settlement with the Geiger Plaintiffs makes it certain that Omega will never "become legally obligated to pay…damages" for any of the claims in the Underlying Action.

For this Court to have subject matter jurisdiction, there must be a live "case" or "controversy."  U.S. Const. art. III, § 2, cl.1.  "To remain a justiciable

controversy, a suit must remain alive throughout the course of litigation, to the moment of final appellate disposition." *Catawba Riverkeeper Found. v. N.C. DOT*, 843 F.3d 583, 588 (4th Cir. 2016) (quoting *Bahnmiller v. Derwinski*, 923 F.2d 1085, 1088 (4th Cir. 1991)). Where circumstances cause a party to lose a legally cognizable interest in the lawsuit, the case must be dismissed as "moot." *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013). Because mootness is a jurisdictional question, it may be raised at any stage in the proceedings. *Id.*

During the pendency of the present action, Appellant Omega settled with the Geiger Plaintiffs. (*See* Addendum, item nos. 1 and 2.)[2] The terms of the settlement—recited in a March 9, 2022 Final Consent Judgment in the Underlying Action—were unusual. Omega consented to the entry of "a judgment in the amount of ONE HUNDRED AND FIFTY-FIVE THOUSAND DOLLARS ($155,000) (hereinafter, the 'Stipulated Judgment')." Omega further agreed to "assign to Plaintiffs all of its rights, claims, and causes of action against Covington" as to the Geiger Plaintiffs' claims. In return, the Geiger Plaintiffs

---

[2] The March 9, 2022 Final Consent Judgment (item 1 in the Addendum) reciting the terms of Omega's settlement with the Settling Plaintiffs is a judicial order that may be cited and attached under Fed. R. Civ. P. 32.1(b) and Local Rule 32.1. This Court may take judicial notice of Stipulation of Discontinuance as it is a matter of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (taking judicial notice of "matters of public record" in appeal from order dismissing action).

agreed not to "assign, document, record, registered [sic] as a lien, or collect against Defendant, Omega, the Stipulated Judgment" except as to "Defendant's…right, title and interest in the Covington Policy."  (Add. No. 1, ¶ 9.)

Thus, even though Omega "consented" to entry of a $155,000 "Stipulated Judgment" against it, the terms of the judgment provided that Omega itself would never, under any circumstance, have to pay a dime out of its own pocket.  Any collection of the judgment amount was conditioned upon a successful indemnity claim against Covington.  Covington did not participate in or approve this settlement.  (Add. No. 1, ¶ 14.)  Nevertheless, the Final Consent Judgment recites that "[t]he Parties [sic] settlement is reasonable" and that "[t]he amount of the Stipulated Judgment is reasonable."  (Add. No. 1, ¶¶ 7, 11.)

A stipulated judgment between a putative insured[3] and a third-party claimant is invalid and unenforceable where, as here, (1) the consideration exchanged for the stipulated judgment is the putative insured's assigning its indemnity claim to the claimant, (2) the claimant promises not to enforce the stipulated judgment against the putative insured, and (3) collection is conditioned on a successful indemnity claim against the insurer.  *Hitt v. Cox*, 737 F.2d 421, 426 (4th Cir. 1984) (applying Virginia law) (holding that an insured cannot agree to a recovery against

---

[3] By "putative insured," Covington means a party whose coverage under an insurance policy is disputed at the time of the settlement.

his insurer of "amounts that the insured does not expect to pay out of its own resources"); *Stonehenge Eng'g Corp. v. Employers Ins. of Wausau*, 201 F.3d 296 (4th Cir. 2000) (rejecting a confessed judgment amount where the insured "never expected to pay a dime of the balance of its confessed judgment from its own resources") (citing *Hitt*). In such a circumstance, "the negotiating parties no longer have adverse interests" and so the "conditional settlement is presumptively unreasonable." *Hitt*, 737 F.3d at 426.

In *Hitt*, the underlying action involved a personal injury suit against Fauquier County. The County's CGL insurer, Harleysville, had issued a policy for $500,000 but denied coverage for the incident. The County settled with the victim for $350,000 in cash, plus an assignment of "an additional $150,000 to [the victim] if [the County] succeeded in an action for indemnification against [the insurer]." In the indemnification action, the district court found that the insurer was estopped from denying coverage and awarded the $350,000 that the County had paid to the plaintiff. But the district court "refused to award the additional $150,000 because the Board had only paid $350,000." *Id.* at 424.

On appeal, this Court affirmed. It observed that County had no incentive to resist the supplemental payment of $150,000 to the plaintiff because this was conditioned on a successful indemnity claim against the insurer:

> Once it agreed to settle by paying Hitt $350,000, it had
> no incentive to avoid an agreement to pay an additional

10

$150,000 *if* Harleysville was found liable to indemnify. In this situation, the negotiating parties no longer have adverse interests, and their conditional settlement is presumptively unreasonable.

*Id.* at 426 (italics in original). This Court further observed that recognizing such an agreement would permit "an insured…to give away an…amount up to the liability limit of the policy conditional on a successful indemnity suit against the insurance company." *Id.* "Declin[ing] to reach such an unfair result," this Court upheld the district court's refusal to award the additional $150,000 that was conditioned on the indemnity judgment.

This makes sense. An insurer's indemnity obligation is itself conditioned on its insured's legal obligation to make payment to a third party for a claim covered by the policy. Where, as here, a consent judgment eliminates all possibility that the insured will ever be held legally responsible for the amount in question, then there is no indemnity obligation. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 715 (Tex. 1996) (invalidating purported assignment of claims in settlements involving "[1] an assignment of a defendant insured's claims against his insurer, [2] a covenant by the plaintiff to limit recovery from the defendant personally, and [3] a judgment for plaintiff against defendant"); *Huffman v. Peerless Ins. Co.*, 193 S.E.2d 773, 774 (N.C. App. 1973) (rejecting indemnity claim in case of contested coverage where the insured agreed to a $20,000 consent

judgment, the putative insured assigned his indemnity claim to the plaintiff, and the plaintiff agreed not to execute against the putative insured).

In the present case, Omega contends that the terms of the Policy extend to the Geiger Plaintiffs' claims. Covington disagrees. Yet even if Omega is correct in its arguments—and it is *not*, see *infra*—it will be unable to recover on the Policy. The Policy requires Covington to pay only "those sums that the insured becomes legally obligated to pay as damages."[4] (JA 36.) The Final Consent Judgment, however, extinguished the possibility that Omega will ever be "legally obligated to pay…damages on these claims," as it forbids the Geiger Plaintiffs from collecting any part of the stipulated judgment amount from Omega. Because Omega "lack[s] a legally cognizable interest in the outcome," the case is now moot. *Springer*, 715 F.3d 535 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Accordingly, this Court should dismiss the present appeal for lack of subject matter jurisdiction. *Id.*

## II. Omega's coverage arguments regarding the Geiger Plaintiffs' Lanham Act claims are procedurally barred and self-defeating.

In its first argument, Omega contends that the District Court erred in rejecting its argument that the Underlying Action asserted claims for "personal and

---

[4] The Policy also requires Covington to provide a defense, which it has done under a reservation of rights. (JA 118-122.)

advertising injury" that were covered by the Policy. The Policy defines "[t]he use of another's advertising idea in your 'advertisement'" as a form of "personal and advertising injury." (Br. at 12 (quoting JA 45)). Omega claims that the "advertising idea" at issue in the Underlying Complaint was the Geiger Plaintiffs' "trademark" in their images. (Br. at 12-14.) And it contends that a trademark can itself be an advertising idea. (Br. at 12.) Thus, Omega concludes, "[i]nsofar as a trademark is an advertising idea" Plaintiff's Lanham Act claims are "personal and advertising" injuries covered by the Policy. (Br. at 14.)

This argument is misbegotten. As an initial matter, Omega failed to raise the issue in its summary judgment briefing.[5] (JA 124-143.) The first time Omega argued that a trademark was an "advertising idea" whose misuse could rise to a covered claim was in its brief in support of its Rule 59(e) motion to alter or amend the District Court's summary-judgment ruling. [ECF No. 27, at 10-14.] But "an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised; accordingly, such an issue is not preserved for appellate review unless the district court exercises its discretion to

---

[5] Omega complains that "the district court did not even address this issue in its Order." (Br. at 14.) But as explained above, the District Court did not address the issue because Omega never asserted it.

excuse the party's lack of timeliness and consider the issue." *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999).

The District Court did not excuse Omega's failure to timely raise its trademark-as-advertising-idea argument. (JA 437.) In its order denying Omega's Rule 59(e) motion, the District Court noted that "there were no allegations of or arguments regarding trademark infringement before it at summary judgment." (JA 438.) And it held that "Omega is not permitted to raise such an argument for the first time here." (JA 438.) Because the District Court did not excuse Omega's untimely assertion of its trademark-as-advertising-idea argument, the issue has been waived for purposes of appeal. *Holland*, 181 F.3d at 605.

Yet even if the issue had been timely asserted—and it was not—the argument fails because the Policy excludes coverage for trademark claims, stating that "[t]his insurance does not apply to…'[p]ersonal and advertising injury' arising out of the infringement of…trademark…rights." (JA 36-37.) This "clearly and unambiguously" bars coverage for Omega's violation of the Geiger Plaintiff's trademark rights. *Nationwide Mut. Fire Ins. Co. v. Erie Ins. Exch.*, 798 S.E.2d 170, 173 (Va. 2017). Thus, to the extent the Underlying Complaint could be deemed to assert a trademark-as-advertising-idea claim—and it cannot, see *infra*—any such claim would not be covered.

14

Finally, the premise of Omega's argument—that trademarks are "advertising ideas"—is baseless.  Trademarks are not ideas for how to market a product.  They are "instruments to identify goods and services."  *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 327 (4th Cir. 2015).  The Underlying Complaint does not allege that Omega's use of the Geiger Plaintiffs' images caused consumers to be confused about whose products and services were being advertised.  Nor could the Geiger Plaintiffs plausibly make such an assertion, as the advertisements that feature them plainly identify the Omega Bar as the nightclub being advertised.  So even if Omega's trademark-as-advertising-argument weren't procedurally waived (and it is) or barred by the trademark exclusion (and it is), it fails because it is conceptually incoherent.

## III.    Omega's coverage arguments regarding the Geiger Plaintiffs' statutory conspiracy claims are waived and, in any event, are not covered by the Policy.

Omega's coverage argument regarding the Geiger Plaintiffs' conspiracy claims fails for similar reasons.  Count II of the Underlying Action asserts that Omega violated Virginia's business-conspiracy statute, Code §§ 18.2-499 and -500.  The District Court found no coverage for this claim for three reasons.  First, it found that "the Policy does not provide personal and advertising injury coverage for injury arising out of the offense of conspiracy."  (JA 414.)  Second, it found that the Policy's "Criminal Acts exclusion applies" because "business

15

conspiracy [under Code § 18.2-499] is itself a criminal act." (JA 415.) Third, it found that the Policy's "knowing violation of rights of another" exclusion applied because the "Geiger Plaintiffs' business conspiracy claim asserts that Omega acted with the intent to injure their reputation, trade, or business." (JA 414.)

On appeal, Omega assigns error only to the second of these three grounds. It claims that the facts alleged in the Underlying Complaint do not identify any criminal conduct committed by Omega. (Br. at 20.) And it claims that, even if the Underlying Complaint had alleged criminal conduct, such conduct was never proven. (*Id.*)

Once again, Omega has waived these arguments by not first presenting them below. Omega's summary-judgment briefs do not even *mention* the Geiger Plaintiffs' statutory conspiracy claims, let alone present arguments for why they should be covered.[6] (*Id.*) *See* JA 409 (District Court noting that "Omega does not respond to or dispute [Covington's] arguments regarding coverage and exclusions" in opposing summary judgment); JA 413 (noting "Plaintiff does not address Covington's argument, or otherwise argue that the exclusions do not apply to Count II). This Court will not consider arguments raised for the first time on appeal. *Pornomo v. United States*, 814 F.3d 681, 686 (4th Cir. 2016).

---

[6] Omega also failed to raise these arguments in its Rule 59(e) motion. [ECF No. 27.]

16

Accordingly, the Court should not consider Omega's coverage arguments regarding the Geiger Plaintiffs' statutory-conspiracy claims.

Omega also has waived the issue by not addressing all the reasons the District Court provided for concluding that there was no statutory-conspiracy coverage. As noted above, the District Court rejected Omega's coverage claim because (1) the Policy's personal and advertising injury coverage did not encompass conspiracy, and (2) the Policy's "criminal acts" exclusions for criminal acts barred coverage, and (3) the Policy's "knowing violation of rights of another" exclusion likewise barred coverage. (JA 413-415.)

As noted above, Omega addresses only the second point. It does *not* explain how the District Court erred in concluding that "the Policy does not provide personal and advertising injury coverage for injury arising out of the act of conspiracy." (JA 414.) Nor does it address the District Court's separate point that the conspiracy claims assert intentional acts of the sort that would implicate the "knowing violation of rights of another" exclusion.

Where, as here, a district court has alternative grounds for a ruling, an appellant must address all those grounds or else forfeit the issue on appeal. *Brown v. Nucor Corp.*, 785 F.3d 895, 918 (4th Cir. 2015) ("'Failure of a party in its opening brief to challenge an alternate ground for a district court's ruling . . . waives that challenge.'") (quoting *United States ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 456 (4th Cir. 2011)); *Silicon Knights, Inc. v. Epic Games, Inc.*, 551

17

F. App'x 646, 649 (4th Cir. 2014) ("[A]n assertion of error is waived when the appellant fails to challenge one of two independent grounds") (citing *Maher v. City of Chi.*, 547 F.3d 817, 821 (7th Cir. 2008)).  Because Omega addresses only one of the three independent grounds the District Court found for denying coverage, Omega has waived the issue.

In addition to being doubly waived, Omega's argument makes no sense. Regardless of the nature of the wrongful acts composing Omega's alleged conspiracy, *the act of conspiring* itself is both an intentional act and a crime under Code § 18.2-499.  And contrary to Omega's argument, the coverage analysis need not await trial.  Liability for statutory conspiracy hinges on whether Omega's intentionally, and criminally, invaded the rights of the Geiger Plaintiffs.  So either there is no coverage (because of the criminal-acts and intentional-acts exclusions) or no liability (because of a finding that Omega did not commit statutory conspiracy).  In neither case would Covington owe Omega any indemnity obligation.

## IV.    The allegations in the Underlying Complaint do not support a potential defamation-by-implication claim.

Finally, Omega claims that the District Court erred in finding no basis in the Underlying Complaint for a possible defamation-by-implication claim.  The Underlying Complaint does not assert defamation claims against Omega. Nevertheless, Omega argued below that it alleged sufficient facts to establish,

18

under Virginia law, "a cause of action for defamation by inference, implication or insinuation." (JA 129.) Omega speculates that its alleged use of the Geiger Plaintiff's images could be deemed to falsely suggest that the models "worked at, endorsed or were otherwise associated or affiliated with Omega." (JA 130.) And this suggestion, it asserts, is both false and defamatory. (JA 130.)

The District Court rejected this argument for two reasons. First, it held that "the Underlying Complaint does not allege how an implied association with [an atmosphere of a food and beverage establishment with nude or semi-nude entertainment] gives rise to a defamatory implication." (JA 425.) Second, it held that Plaintiffs do not allege that Omega "designed or intended" the use of their images "to imply the defamatory meaning." (JA 425.) "To the contrary," the District Court notes, "the Underlying Complaint alleges Omega used the Geiger Plaintiffs' images to promote and draw customers to their business—not to shame or disgrace them." (JA 425.) Accordingly, it held, the allegations in the Underlying Complaint did not sufficiently allege a potential claim for defamation by implication. (JA 425.)

On appeal, Omega presents several arguments for why the District Court erred holding that the Underlying Complaint failed to state a claim for defamation by implication. None of these arguments has merit.

First, Omega contends that the District Court "ignored…that the Geiger Plaintiffs could make out a prima facie case for defamation *per se*." (Br. at 24.)

This misstates the record.  As the District Court explained in its decision denying

Omega's Rule 59(e) motion, it did not address the defamation per se issue because

"this was not an argument that was developed by either party at summary

judgment."  (JA 434.)  Nevertheless, the District Court exercised its discretion to

consider the issue.  Over the course of more than two pages, the District Court

painstakingly explained why the Underlying Complaint did not allege facts that

could be the potential basis for a defamation per se claim.  (JA 434-436.)  The

District Court explained that the Underlying Complaint does not allege that the

publications imply that the Geiger Plaintiffs lack the "skills or character required to

carry out" their modeling profession or otherwise engaged in conduct that was

"incompatible with the proper conduct" of a model.  (JA 434-436) (quoting

*Fleming v. Moore*, 275 S.E.2d 632, 636 (Va. 1981)).

Omega also points out that the Policy covers damages arising out of

allegations that that the insured "disparage[] a person's…goods or services."  (Br.

at 24) (citing JA 45).  But this argument misses the point.  Such allegations can

give rise to damages only if there is a viable defamation claim.  And as the District

Court correctly explained, the facts alleged in the Underlying Complaint were

insufficient to establish a potential defamation claim.  (JA 422-426, JA 434-436.)

Omega next argues that, contrary to the District Court's ruling, the

Underlying Complaint satisfies the elements of defamation-by-implication.  (Br. at

26.)  Under Virginia law, a party alleging defamation by implication must show:

20

> (1) that the defendants made the statements alleged in the complaint, (2) that the statements, even if facially true, were designed and intended by the defendants to imply [a defamatory meaning], (3) that in the light of the circumstances prevailing at the time they were made, the statements conveyed that defamatory implication to those who heard or read them, and (4) that the plaintiff suffered harm as a result.

*Pendleton v. Newsome*, 772 S.E.2d 759, 765 (Va. 2015).

For a false statement to be actionable, however, it "must have the requisite defamatory 'sting' to one's reputation. " *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015). "Defamatory words are those 'tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* Under Virginia law,[7] it is the job of the court, not the jury, to determine "as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact." *Id.* at 595.

Omega contends that the Geiger Plaintiffs alleged sufficient facts to establish defamation by implication because, Omega asserts, the Underlying Complaint adequately alleges (1) that "Omega made the statements," (2) that

---

[7] Although it is undisputed that Virginia's defamation law applies to this case, Omega spends much of its brief discussing the defamation law of New York and Arizona. Because Virginia's defamation law is well-settled and plainly stated, the Court need not look elsewhere for governing principles.

"Omega falsely accused them of working at, endorsing, or otherwise being affiliated with Omega," (3) "that the statements conveyed that defamatory implication to those who heard [sic] them," and (4) that this caused "harm, including to reputation." (Br. at 26-27.)

This argument fails for several reasons. To begin with, the Underlying Complaint does *not* allege that Omega "accused" the Geiger Plaintiffs of anything. At most, the Geiger Plaintiffs alleged that Omega *implied* that they had some affiliation with Omega. More to the point, Omega does not explain how the Underlying Complaint satisfies *Pendleton's* second element for defamation by implication—i.e., that the statements "were designed and intended to imply [a defamatory meaning]."[8] Nor can it.

To be defamatory, the statement must have "the requisite 'sting' to one's reputation." *Handberg v. Goldberg*, 831 S.E.2d 700, 706 (Va. 2019) (citing *Schaecher,* 772 S.E.2d at 599). Specifically, Virginia law requires that the statement be one that "tend[s] to injure one's reputation in the common estimation of

---

[8] Omega states that "there is no obligation in Virginia that the purpose of a defamatory statement be to 'shame and disgrace' the subject." (Br. at 32.) This is false. In cases involving defamation by implication, one of the elements a plaintiff must establish is that the publisher of the statement *intended* the defamatory implication. *Pendleton*, 772 S.E.2d at 765. As noted above, the allegations in the Underlying Complaint do not suggest that Omega intended to defame the Geiger Plaintiffs.

mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Handberg*, 831 S.E.2d at 706 (citing *Schaecher*, 772 S.E.2d 589) (quoting *Moss v. Harwood*, 392, 46 S.E. 385 (Va. 1904)); *Schaecher*, 772 S.E.2d at 599 ("Reputation must be affected to a magnitude sufficient to render one odious, infamous, or ridiculous, or subject to disgrace, shame, scorn, or contempt.").

"Merely because the statement may be deemed to have a false factual connotation . . . is not sufficient to support a defamation action." *Eramo v. Rolling Stone, LLC*, 209 F.Supp.3d 862, 876 (W.D. Va. 2016) (citing *Katz v. Odin, Feldman & Pittman, P.C.*, 332 F.Supp.2d 909, 922 (E.D. Va. 2004)). In fact, the Virginia Supreme Court's "jurisprudence acknowledges that statements can be made that are offensive, unpleasant, harsh, and critical without necessarily constituting defamation." *Schaecher*, 772 S.E.2d at 595-96.

The Underlying Complaint alleges exactly the opposite of a statement rendered the Geiger Defendants odious or subjected to shame or ridicule. Instead, Omega "showcased" the Geiger Plaintiffs as beautiful and glamorous "to attract clientele to the Club" and to "promote the club." (JA 83-84, ¶¶ 97-98.)

Omega also accuses the District Court of improperly "injecting its own judgment whether association with a nightclub could be defamatory or

23

disparaging." (Br. at 29.) But, under Virginia defamation law, the court makes the determination of whether a statement has the requisite defamatory sting as "a threshold matter of law." *Schaecher*, 772 S.E.2d at 595. And as the District Court explained, a model's implied association with a "lawful establishment carrying out a lawful business" does not carry "the requisite sting" and so is "not reasonably capable of conveying defamatory innuendo." (JA 423, JA436.) No reasonable person viewing the advertisements would construe them as intended to injure the depicted models' reputations. (JA 164-97.)

Stepping back to consider the implications of Omega's argument reveals its absurdity. Omega is asking the Court to conclude—as a matter of law[9]—that Omega used its advertisements to disparage the Geiger Plaintiffs by associating them with Omega's own nightclub business. This is upside down. Companies use attractive models to boost the image of their products and services—hoping the models will cast a positive halo on them. They do not use attractive models to ruin the models' reputations. The Court should reject Omega's invitation to reach such a bizarre conclusion.

---

[9] As noted above, the Underlying Complaint does not allege that Omega's purpose was to disparage the Geiger Plaintiffs.

24

<u>CONCLUSION</u>

For all the foregoing reasons this Court should dismiss this appeal for lack of subject matter jurisdiction or, in the alternative, affirm the judgment below.

Respectfully submitted,

COVINGTON SPECIALTY
INSURANCE COMPANY


_/s/ Charles M. Sims_____
Of counsel

Charles M. Sims (VSB No. 35845)
Joseph M. Rainsbury (VSB No. 45782)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile: (804) 237-0250
csims@ohaganmeyer.com
jrainsbury@ohaganmeyer.com

*Counsel for Appellee*

ADDENDUM

<u>ADDENDUM TABLE OF CONTENTS</u>

1.    Final Consent Judgment in
      *Geiger et al. v. Omega Restaurant & Bar, LLC*, Civil Action
      No. 2:23-cv-256, Docket No. 48 (E.D. Va. March 9, 2022). .................Add. 1

2.    Stipulation of Discontinuance in
      *Geiger et al. v. Omega Restaurant & Bar, LLC*, Civil Action
      No. 2:23-cv-256, Docket No. 49 (E.D. Va. March 11, 2022). ...............Add. 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| BRENDA LYNN GEIGER, et al. | |
| *Plaintiffs*, | |
| - against - | Civil Action No. 2:21-cv-00256 |
| OMEGA RESTAURANT & BAR, LLC, | |
| *Defendant*. | |

**FINAL CONSENT JUDGMENT**

**COME NOW**, Plaintiffs BRENDA LYNN GEIGER, CLAUDIA SAMPEDRO, IRINA VORONINA, JESSICA BURCIAGA, JESSICA ROCKWELL, LINA POSADA, LUCY PINDER, MAYSA QUY, PAOLA CANAS and SANDRA VALENCIA (collectively, "Plaintiffs") and Defendant OMEGA RESTAURANT & BAR, LLC ("Defendant" or "Omega"), by and through their respective undersigned counsel, and hereby respectfully petition the Court for entry of this Final Consent Judgment and would show unto the Court as follows:

1.      This is an action brought pursuant to, *inter alia*, 15 U.S.C. § 1125(a) relating to advertisements published by Defendant depicting images of Plaintiffs. These advertisements were published using multiple social media venues, including but not limited to Defendant's Facebook and Instagram accounts.

2.      Plaintiffs alleged in the Complaint that Defendant used their images without consent or remuneration, and that the advertisements depicted Plaintiff in a manner that implied they were promoting the Defendant's night club, worked thereat, or were otherwise associated,

Add. 1

affiliated, or connected with same.

3.      At the time of Defendant's alleged use of each Plaintiffs' images in advertising, Defendant was insured by insurance Policy Number VBA379367 issued by Covington Specialty Insurance Company ("Covington") with the named insured as Omega Restaurant & Bar, LLC ("Omega").

4.      Defendants has tendered a request for defense and indemnification to Covington pursuant to the above-referenced policy.

5.      In response, Covington initiated a lawsuit against Omega in this Court, Case No. 21-cv-00247-RCY-RJK, wherein it sought a declaration from this Court that it owed Omega neither a duty to defend nor indemnify Omega in this action.

6.      Plaintiffs and Defendant have therefore entered into a settlement agreement pursuant to which their answer notwithstanding, Defendant consents to entry of the following judgment for the purpose of compromising disputed claims: a judgment in the amount of ONE HUNDRED AND FIFTY-FIVE THOUSAND DOLLARS ($155,000) (hereinafter, the "Stipulated Judgment").

7.      The amount of the Stipulated Judgment is reasonable in light of what a jury might reasonably award in compensation attributable to Defendant's alleged conduct coupled with the amount of attorneys' fees and costs a Court may reasonably award pursuant to 15 U.S.C. § 1117 in the event Plaintiffs prevails at trial.

8.      Further, as part of the parties' settlement, Defendant has agreed that once the Stipulated Judgment is entered herein, Defendant will assign to Plaintiffs all of its rights, claims, and causes of action against Covington and its agents, brokers, employees, officers and all other persons or entities to or arising out of (i) any applicable insurance policy or policies;

Add. 2

(ii) the claims made by Plaintiffs' against Defendant herein; and, (iii) any other assignment entered into by and between Plaintiffs and Defendant (the "Assigned Claims).

9.      In consideration for these assignments, and effective after such assignments have been delivered to Plaintiff, Plaintiff agrees to not take any action of any kind to assign, document, record, registered as a lien, or collect against Defendant, Omega, the Stipulated Judgment; save and except for Defendant's assets consisting of any and all right, title and interest in the Covington Policy together with all of their respective rights, claims, and causes of action in the Assigned Claims (the "Omega Covenant").

10.     Plaintiffs will thereafter dismiss all claims she has asserted in this suit, with prejudice.

11.     The Parties settlement is reasonable.

12.     The Stipulated Judgment will be the complete and final judgment addressing all claims Plaintiffs have asserted in this lawsuit against Defendant.

13.     This Judgment and the agreements and documents referred to herein contain the entire agreement and understanding among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, whether written or oral. The Parties are not relying, nor shall in any way rely, upon any oral or written agreements, representations, warranties, statements, promises, or understandings not specifically set forth in this Agreement, and waive any right to assert or claim that they were induced to enter into this Agreement by any representation, promise, statement or warranty which is not expressly set forth in this agreement.

14.     Nothing in this Agreement shall be construed as giving any person, firm, corporation or other entity, including Covington, other than the signatory parties hereto, and

3

Add. 3

their respective successors and permitted assigns, any right, defense, remedy or claim under or in respect to this Agreement or any provision hereof.

15.    For all purposes of this Agreement, time is of the essence.

16.    The Parties acknowledge and agree that all parties and their counsel participated in negotiating and drafting this Agreement, no rule of construction shall apply to this Agreement which construes any language, whether ambiguous, unclear otherwise, in favor of, or against, any party by reason of the party's role in drafting this Agreement.

17.    The motion for entry of judgment is well taken and should be GRANTED.

**IT IS THEREFORE ORDERED THAT:**

A.    Judgment is entered in this action in favor of Plaintiffs and against Defendant, Omega, for all claims set forth in the Complaint, in the amount of ONE HUNDRED AND FIFTY-FIVE THOUSAND DOLLARS ($155,000), plus post-judgment interest beginning on the date this judgment is entered until final payment.

B.    Plaintiffs shall not assign or, upon the Omega Covenant becoming effective, execute, or otherwise attempt in any manner to collect on the Stipulated Judgment except as to Defendant's assets consisting of any and all right, title and interest in the Covington Policy together with all of their respective rights, claims, and causes of action in the Assigned Claims.

C.    Upon the assignment of the Assigned Claims to Plaintiffs by Defendant, the Omega Covenant shall become effective.

D.    Within ten (10) days after the Omega Covenant becomes effective, Plaintiffs shall file a stipulation of discontinuance, dismissing all claims against Omega with prejudice.

4

E.  The Court will continue to retain jurisdiction over this matter.

Date: 3 - 9 - 22

HON. LAWRENCE R. LEONARD, U.S.M.J.

Add. 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

|  |  |
|---|---|
| BRENDA LYNN GEIGER, et al. | |
| *Plaintiffs*, | Civil Action No.: 2:21-cv-00256 |
| - against - | **STIPULATION OF** |
| | **DISCONTINUANCE** |
| OMEGA RESTAURANT & BAR, LLC, | |
| *Defendant*. | |

It is hereby stipulated and agreed, by and between the undersigned, that whereas no party hereto is an infant or an incompetent person for whom a committee has been appointed or a conservatee, and no person not a party has an interest in the subject matter of this action, all claims in this action asserted by plaintiffs DANIELLE RUIZ, DESSIE MITCHESON, JAMILLETE GAXIOLA, JESSICA HINTON, JESSICA KILLINGS, MARIANA DAVALOS, and TIFFANY TOTH against all defendants are hereby dismissed and discontinued with prejudice and without attorneys' fees, expenses and costs to any party.

**THE CASAS LAW FIRM, P.C.**

By:. /s/ John V. Golaszewski
    John V. Golaszewski
    1740 Broadway, 15th Floor
    New York, New York 10019
    T: 646-872-3178
    john@talentrights.law

**WHARTON LEVIN EHRMANTRAUT & KLEIN**

By:/s/ Christine Bondi
    Christine Bondi
    10300 Eaton Place, Suite 301
    Fairfax, VA 22030
    T: 703-591-9700
    cab@wlekn.com
    *Attorneys for Plaintiffs*

**MCCANDLISH HOLTON PC**

By: /s/ Joseph M. Moore
    Joseph M. Moore
    1111 E Main Street, Suite 2100
    Richmond, Virginia 23218
    T: 804-819-1174
    joe.moore@lawmh.com
    *Attorneys for Defendants*

- 1 -

**Add. 6**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. __24-1364__     **Caption:** Covington Specialty Insurance Company v. Omega Res

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]     this brief or other document contains ____5,548____ [*state number of*] words

[ ]     this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]     this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 2016 _____ [*identify word processing program*] in
14 point Times New Roman _____ [*identify font size and type style*]; **or**

[ ]     this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Charles M. Sims _____

Party Name __appellee_____

Dated: __8/26/2024_____

04/12/2020  SCC